**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Kanwaldeep Singh Kalsi,<br><br>        Debtor. | **FOR PUBLICATION**<br><br>Chapter 7<br><br>Case No. 20-10330 (MG) |
| Namrita Purewal,<br><br>        Plaintiff,<br><br>v.<br><br>Estate of Kanwaldeep Kalsi, The Trustee of the Estate of Kanwaldeep Kalsi, Kanwaldeep Kalsi,<br><br>        Defendants. | Adv. Pro. No. 21-01159 (MG) |

**MEMORANDUM OPINION AND ORDER DETERMINING WHICH OF NAMRITA PUREWAL'S CLAIMS AGAINST THE DEBTOR ARE ENTITLED TO PRIORITY AND WHICH ARE EXCEPTED FROM DISCHARGE UNDER SECTIONS 523(A)(5) AND 523(A)(15) OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S :*

NAMRITA PUREWAL
*Pro se*
67 Liberty Street
Fifth Floor
New York, NY 10005
By: Namrita Purewal

LAW OFFICES OF ALLA KACHAN, P.C.
*Attorneys for Debtor*
3099 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11235
By: Alla Kachan, Esq.

LAMONICA HERBST & MANISCALCO, LLP
*Attorneys for Angela Tese-Milner, in her capacity as Chapter 7 Trustee*
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
By: Salvatore LaMonica

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Namrita Purewal ("Ms. Purewal" or "Purewal"), the former spouse of the debtor Kanwaldeep Singh Kalsi ("Kalsi" or "Debtor"), filed Proof of Claim # 8-1 (the "Proof of Claim") in Kalsi's chapter 7 case, asserting debts owed to her arising from a divorce that she asserted were excepted from discharge under sections 523(a)(5) and (a)(15).  She also filed this *pro se* adversary proceeding naming as defendants Kalsi and the chapter 7 trustee, Angela Tese-Milner (the "Trustee").  (*See* "Complaint," ECF Doc. # 1.)  The Trustee also filed an adversary proceeding against Ms. Purewal seeking a determination that certain real property is property of the Debtor's estate.  (*See Tese-Milner v. Purewal (In re Kalsi)*, Adv. Pro. No. 21-01177 (MG).)  Ms. Purewal's claims against Kalsi, asserted on a variety of legal theories both in the Proof of Claim and in the Complaint, allege among other things that Kalsi wrongfully misappropriated Ms. Purewal's separate property to purchase a home in Southampton (the "Southampton Property") and a condominium in New York City (the "Liberty Street Condominium"), with title to both properties recorded in Kalsi's name only, even though her funds were used to make the purchases.  (Complaint ¶¶ 13–14, 29–33.)  In an earlier opinion in this adversary proceeding, the Court granted the Trustee's motion to dismiss and determined that the Southampton Property was property of the estate, free of any unrecorded interest or constructive trust in favor of Purewal.[1]  *See Purewal v. Estate of Kalsi (In re Kalsi)*, Adv. Pro. No. 21-01159 (MG), 2021 WL 3573749 at *1 (Aug. 12, 2021) ("Trustee MTD Opinion").  The case remains pending against the Debtor because the Debtor has not "filed a motion to dismiss, but instead filed an answer to the Complaint . . . ."  *Id.* at *1, n.2.  Additionally, in the Trustee's adversary proceeding against

---

[1]    The Southampton Property was then sold by the Trustee with the net sale proceeds being held by the Trustee.  (Case No. 20-10330 (MG), ECF Doc. # 147.)

2

Purewal, the Court granted the Trustee's summary judgment motion and determined that the Liberty Street Condominium is property of the estate, free of any unrecorded interest or constructive trust in favor of Purewal.[2] (*See* Adv. Pro. No. 21-1177 (MG), ECF Doc. # 23.)

Ms. Purewal has obtained substantial monetary awards in the Divorce Action (defined below) commenced by the Debtor. Some of those awards are entitled to priority treatment under section 507(a)(1) of the Bankruptcy Code, and other parts of her awards are only entitled to treatment as unsecured claims. It appears unlikely that Kalsi's bankruptcy estate will have sufficient funds available for distribution to satisfy all administrative expenses and priority creditor claims, and certainly not enough to satisfy all unsecured claims.

The question then is which, if any, of Ms. Purewal's prepetition claims that are not satisfied in full in distributions from the Debtor's estate are excepted from discharge? Two particular sections of the Bankruptcy Code except from discharge debts of a debtor "for a domestic support obligation," 11 U.S.C. § 523(a)(5), and "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce . . . made in accordance with State . . . law . . . ." *Id.* § 523(a)(15).

This Opinion and Order addresses the following issues surrounding Ms. Purewal's claims: (1) which claims are entitled to priority treatment; (2) whether or not her claims are entitled to priority treatment, which claims are excepted from discharge if not paid in full from the distribution of estate property; and (3) which, if any, of Ms. Purewal's remaining claims should be dismissed.

---

[2] The Liberty Street Condominium remains unsold and is property of the estate.

3

## I. BACKGROUND

On September 27, 2017, the Debtor commenced a divorce action (the "Divorce Action") against Ms. Purewal in the Supreme Court of New York, County of Suffolk (the "State Court"). (*See* "Matrimonial Order," *In re Kanwaldeep Singh Kalsi*, Case No. 20-10330 (MG) ("Main Case") ECF Doc. # 146 at 1.)[3] On February 3, 2020, the Debtor initially filed for relief under chapter 11. (*See* Main Case ECF Doc. # 1.) Upon the filing, the automatic stay paused the Debtor's Divorce Action. On March 31, 2020, the Court issued a memorandum opinion and order lifting the stay to allow Ms. Purewal and the Debtor to continue the Divorce Action (1) "to determine the interest of the Debtor and Purewal in marital property and the Debtor's permanent domestic support obligations and (2) retaining jurisdiction over the distribution of property of the Debtor's estate." (Main Case ECF Doc. # 27 at 2.)

The Debtor's chapter 11 case was converted to one under chapter 7 on December 4, 2020. (Main Case ECF Doc. # 57.) On December 21, 2020, two notices were filed: (i) a form 309A providing notice to creditors of the Debtor's chapter 7 bankruptcy case ("Form 309A," Main Case ECF Doc. # 62) and (ii) a notice of possible dividends ("Notice of Possible Dividends," Main Case ECF Doc. # 63). Form 309A established the deadline to object to discharge as March 8, 2021 ("Objection to Discharge Deadline"). (Form 309A at 2.) The Notice of Possible Dividends set the bar date to file proofs of claim as March 25, 2021 ("Bar Date"). (Notice of Possible Dividends.) On February 26, 2021, Ms. Purewal timely filed the Proof of Claim. (Proof of Claim.)

---

[3] A redacted copy of the Matrimonial Order was filed on the Main Case docket (Main Case ECF Doc. # 146), and an unredacted copy of the Matrimonial Order was sent to Chambers via email.

4

Ms. Purewal did not file an objection to the Debtor's discharge by the Objection to Discharge Deadline. This adversary proceeding was commenced by Ms. Purewal on June 9, 2021, after that deadline had passed.[4] (Complaint at 1.) Her six requests for relief were as follows:

1. A declaration that defendants hold the described property as constructive trustees for the benefit of the plaintiff;
2. A declaration that defendants, or either of them, do not possess or own any interest in the described property;
3. Ordering the conveyance of the described property from defendants to plaintiff, free and clear of any and all interests, liens, and claims;
4. Awarding plaintiff damages in that amount of $3.5 million
5. Awarding costs of suit incurred; and
6. Granting such other and further relief as the court may deem proper.

(*Id.* at 7.)

The Trustee MTD Opinion dismissed claims 1 through 3 of the requested relief. *See* Trustee MTD Opinion at *1. Of Ms. Purewal's remaining requests for relief, the following were not addressed by the Trustee MTD Opinion: (i) the requested award for damages in the amount of $3.5 million and (ii) the requested award for costs of the suit. The Trustee's motion to dismiss stated that Ms. Purewal provided "no factual or legal basis for such relief in the Complaint" for both requests. (ECF Doc. # 7, ¶¶ 51–52.) Additionally, the Debtor filed an answer to the Complaint that denies all assertions made by Ms. Purewal in the Complaint and asserts that the Court should dismiss the Complaint in its entirety. ("Answer," ECF Doc. # 9 ¶¶ 36, 53.) However, the Debtor has not filed a motion to dismiss. On July 27, 2021, Ms. Purewal filed a reply to the Trustee's motion to dismiss which did not mention the requested damages award or

---

[4]    Even if the Complaint had included (or was construed to include) a request to deny Kalsi a discharge from Purewal's claims, the Complaint was untimely because the Objection to Discharge Deadline was March 8, 2021, and the Complaint was filed on June 9, 2021. But, as discussed in this Opinion, the awards Purewal received in the Matrimonial Order are excepted from discharge as a matter of law.

5

court costs. ("Reply," ECF Doc. # 21.) Recovery of damages by Purewal is addressed in this Opinion. Recovery of costs by the prevailing party is dealt with through the filing of a bill of costs. *See* Fed. R. Bankr. P. 7054(b)(1) and Fed. R. Civ. P. 54(d)(1). Costs could not be taxed against the Trustee who is a prevailing party; costs, if any, against Kalsi would, in any event, appear to be limited to the adversary proceeding filing fee.

On September 24, 2021, the Hon. Deborah Poulos issued the Matrimonial Order in the Divorce Action. (Matrimonial Order at 42.) Kalsi appealed the Matrimonial Order on October 10, 2021, and this appeal remains pending. (ECF Doc. # 38.) On December 10, 2021, the Court entered an Order requesting that the State Court clarify which portions of the Matrimonial Order are considered "equitable distribution" under state law. ("Order Requesting Clarification," ECF Doc. # 41.) The Order Requesting Clarification further stated that it was "unclear . . . which portions of the Matrimonial Order are non-dischargeable under Bankruptcy Code section 523(a)(15)." (*Id*. at 1.) "Matrimonial awards that are determined to be 'equitable distribution' are unsecured claims that are not entitled to a priority under section 507(a)(1)(A), but they are non-dischargeable under Bankruptcy Code section 523(a)(15)." (*Id.* at 1–2.) In response to the Order Requesting Clarification, Judge Poulos entered an order clarifying which portions of the award she previously awarded were equitable distribution ("Equitable Distribution Awards"). Judge Poulos clarified that the following are Equitable Distribution Awards:

(1) All proceeds from the sale of the Liberty Street Condominium and Southampton Residence including a stipulated separate property credit of $739,000.00.

(2) The equalization of bank accounts amounting to $171,985.38 at the time the Divorce Action commenced.

(3) Fifty percent of the escrow funds in the amount of $42,903.00 with each party to receive $21,451.50 which the State Court directed that Kalsi's share be paid towards Purewal's attorneys.

6

    (4) Pursuant to a stipulation, fifty percent of Kalsi's 401(K) plan for the marital period consisting of the date of the marriage through the date commencing the Divorce Action.

    (5) Any jewelry and personal property each party retained in their possession.

    (6) Counsel fees of $86,113.63 which was made payable to Purewal's attorneys.

("State Court Clarifying Order," ECF Doc. # 42.)[5]

The remaining awards ("Domestic Support Awards") in favor of Purewal (and not discussed in the State Court Clarifying Order) were awarded as follows:

- Child support payments of $5,183.89 per month. (Matrimonial Order at 19.)

- Medical and dental insurance coverage for the Debtor's children. (*Id.*)

- Child support arrears that accrued through the filing of the bankruptcy totaling $140,948.92. (*Id.* at 33.)

- Maintenance arrears that accrued from March 2020 through July 2020 totaling $17,665.50. (*Id.* at 34.)

- A life insurance policy in the amount of $2 million that names the children as irrevocable beneficiaries until their emancipation with Ms. Purewal as trustee. (*Id.* at 35.)

- Ms. Purewal's attorneys' fees in the amount of $75,000.[6]

---

[5]     A redacted copy of the State Court Clarifying Order was filed on the docket (ECF Doc. # 42-1), and Chambers received an unredacted copy of the State Court Clarifying Order via email.

[6]     In a separate order, dated January 27, 2020, Judge Poulos ordered that Kalsi directly pay Ms. Purewal's attorneys' fees in the amount of $75,000. In an earlier opinion, this Court concluded that "[i]t is well-settled that attorneys' fees awarded to a spouse in connection with a divorce proceeding are domestic support obligations within the meaning of section 101(14A), which are non-dischargeable under section 523(a)(5)." *See Campagna Johnson Mady, P.C. v. Kalsi (In re Kalsi)*, 631 B.R. 369, 371 (Bankr. S.D.N.Y. 2021).

7

## II. DOMESTIC SUPPORT OBLIGATIONS ARE ENTITLED TO PRIORITY TREATMENT AND ARE EXCEPTED FROM DISCHARGE UNDER SECTION 523(A)(5) TO THE EXTENT NOT PAID IN FULL FROM DISTRIBUTIONS FROM THE ESTATE

The priority status of "domestic support obligations" is clearly established in the Bankruptcy Code. "Domestic support obligations" are granted a first priority under section 507(a)(1). 11 U.S.C. § 507(a)(1). "To qualify for the higher priority in section 507(a)(1)(A), the claim must, as of the petition date, be owed to a spouse, former spouse or child of the debtor, or such child's parent, legal guardian or responsible relative." 4 COLLIER ON BANKRUPTCY ¶ 507.03[1] (16th ed. 2021). In *In re Kalsi*, I noted that "any distribution from the estate" for claims held by Ms. Purewal "(and any other holders of claims that are prepetition domestic support obligations) under section 507(a)(1)(A) would be paid first (after any administrative expense recovery by the chapter 7 trustee under section 507(a)(1)(C))." 631 B.R. at 374. To the extent that awards determined to be "domestic support obligations" are not paid in full from distributions made by the debtor's estate, they are excepted from discharge under section 523(a)(5).

Section 523(a)(5) of the Bankruptcy Code excepts debts from discharge that are "for a domestic support obligation." 11 U.S.C. § 523(a)(5). A non-dischargeable "domestic support obligation" under section 523(a)(5) is defined by the Bankruptcy Code as a debt that is:

> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

>   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>   (i) a separation agreement, divorce decree, or property settlement agreement;
>   (ii) an order of a court of record; or
>   (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
>   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

"In order to qualify as a domestic support obligation, all four requirements must be satisfied." *Romano v. Romano (In re Romano)*, 548 B.R. 39, 46 (Bankr. S.D.N.Y. 2016). "The determination of what constitutes a domestic support obligation is to be based on principles of federal law." *Id.* (citing *Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir. 1987)). It is true that "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. . . ." *Forsdick v. Turgeon*, 812 F.2d at 802 (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977)). It is also true that "Congress could not have intended that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established laws of the States." *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir. 1981); *see also* 4 COLLIER ON BANKRUPTCY ¶ 523.11[6] (16th ed. 2021) (stating that in determining whether a debt is nondischargeable support bankruptcy courts can look to the intent "of the state court in creating the obligation and the purpose of the obligation in light of the parties' circumstances at that time.").

Here, the Court finds that the State Court's Domestic Support Awards are "domestic support obligations" under section 523(a)(5). In the Matrimonial Order, the State Court determined the following were Domestic Support Awards:

- Child support payments of $5,183.89 per month. (Matrimonial Order at 19.)

- Medical and dental insurance coverage for the Debtor's children. (*Id.*)

- Child support arrears that accrued through the filing of the bankruptcy totaling $140,948.92. (*Id.* at 33.)

- Maintenance arrears that accrued from March 2020 through July 2020 totaling $17,665.50. (*Id.* at 34.)

- A life insurance policy in the amount of $2 million that names the children as irrevocable beneficiaries until their emancipation with Ms. Purewal as trustee. (*Id.* at 35.)

The Court finds that the Domestic Support Awards are "domestic support obligations" as defined in section 101(14A) of the Bankruptcy Code and are excepted from discharge under section 523(a)(5). First, those debts are owed to either the Debtor's children or to Ms. Purewal—the Debtor's former spouse. 11 U.S.C. § 101(14A)(A)(i). Second, those debts are in the nature of alimony, maintenance, or support, and they are non-punitive in nature. *Id.* § 101(14A)(B). Third, the debts were established by reason of applicable provisions of the Matrimonial Order, an order of a court of record. *Id.* § 101(14A)(C)(ii). And fourth, the debts have not been assigned to a nongovernmental entity. *Id.* § 101(14A)(D). Therefore, the Domestic Support Awards are excepted from discharge under section 523(a)(5) of the Bankruptcy Code and are entitled to priority under section 507(a)(1)(A) of the Bankruptcy Code.

### III. EQUITABLE DISTRIBUTION AWARDS ARE EXCEPTED FROM DISCHARGE UNDER SECTION 523(A)(15) BUT ARE UNSECURED CLAIMS

"Section 523(a)(15) encompasses a broader category of debt than a domestic support obligation under section 523(a)(5)." *In re Mason*, 545 B.R. 462, 466 (Bankr. S.D.N.Y. 2016). There are three elements to find a claim is excepted from discharge under section 523(a)(15):

(1) The debt in question is to a spouse, former spouse or child of the debtor;

10

> (2) The debt is not a support obligation of the type described in section 523(a)(5); and
>
> (3) The obligation was incurred in a separation agreement, divorce decree or other order of a court of record.

4 COLLIER ON BANKRUPTCY ¶ 523.23 (16th ed. 2021); 11 U.S.C. § 523(a)(15).

In *In re Forney*, No. 14-72143-REG, 2015 WL 1757117, at *2 (Bankr. E.D.N.Y. Apr. 14, 2015), Judge Grossman stated that Second Circuit courts have recognized that "'[t]he current version of the Bankruptcy Code, as modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), significantly limits the ability to discharge a debt related to a matrimonial action,' and, as a result, the types of debts that are non-dischargeable have expanded to include even non-support debts pursuant to section 523(a)(15)." *Id.* at *2 (quoting *In re Schenkein,* No. 09–14658(AJG), 2010 WL 3219464, at *4 (Bankr. S.D.N.Y. Aug. 9, 2010)). Indeed, courts have noted that that awards to a spouse or former spouse for equitable distribution are excepted from discharge under section 523(a)(15). *Gilman v. Golio (In re Golio)*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008) ("With respect to non-domestic support obligations, such as awards relating to equitable distribution, 11 U.S.C. § 523(a)(15) now provides that a discharge under the Bankruptcy Code does not discharge an individual debtor from any [such] debt . . . ."); *see also In re St. Clair*, No. 08-27884, 2011 WL 6888369, at *2 (Bankr. D.N.J. Dec. 29, 2011) ("In a chapter 7 proceeding, an equitable distribution obligation is excepted from discharge under 11 U.S.C. § 523(a)(15).").

Here, the State Court Clarifying Order determined the following as Equitable Distribution Awards:

> (1) All proceeds from the sale of the Liberty Street Condominium and Southampton Residence including a stipulated separate property credit of $739,000.00.

11

  (2) The equalization of bank accounts amounting to $171,985.38 at the time the Divorce Action commenced.

  (3) Fifty percent of the escrow funds in the amount of $42,903.00 with each party to receive $21,451.50 which the State Court directed that Kalsi's share be paid towards Purewal's attorneys.

  (4) Pursuant to a stipulation, fifty percent of Kalsi's 401(K) plan for the marital period consisting of the date of the marriage through the date commencing the Divorce Action.

  (5) Any jewelry and personal property each party retained in their possession.

  (6) Counsel fees of $86,113.63 which was made payable to Purewal's attorneys.

(State Court Clarifying Order.)

  The Court finds and concludes that these Equitable Distribution Awards are excepted from discharge under section 523(a)(15) of the Bankruptcy Code. *See In re Golio*, 393 B.R. at 61 (noting that awards for equitable distribution are excepted to discharge under section 523(a)(15)); *see also In re St. Clair*, 2011 WL 6888369, at *2 (stating that "an equitable distribution obligation is excepted from discharge under" section 523(a)(15).). First, the Equitable Distribution Awards are debts owed to a former spouse—Ms. Purewal. 11 U.S.C. § 523(a)(15). Second, they are not a "domestic support obligation" as described in section 523(a)(5) and defined in section 101(14A) because they are not in the nature of maintenance, alimony, or support. *Id.* §§ 523(a)(5), (15), 101(14A). And third, they were debts incurred in a divorce decree by the State Court—an order of a court of record. *Id.* § 523(a)(15). Therefore, the Equitable Distribution Awards are excepted from discharge under section 523(a)(15) of the Bankruptcy Code.

Lastly, the Equitable Distribution Awards determined to be excepted from discharge under section 523(a)(15) of the Bankruptcy Code will not be afforded a priority status under section 507(a)(1). Instead, they will be treated as general unsecured claims.

### IV. **BOTH THE DOMESTIC SUPPORT OBLIGATION AWARDS AND THE EQUITABLE DISTRIBUTION AWARDS ARE PREPETITION CLAIMS**

Claims that are filed after the chapter 11 petition date but before a debtor's conversion to chapter 7 are to be treated as prepetition claims. Here, all claims filed before the conversion of the Debtor's chapter 11 case to a case under chapter 7 on December 4, 2020 (Main Case ECF Doc. # 57) are treated as prepetition claims under section 348(d). "A claim against the [debtor's estate] that arises after the order for relief but before conversion," other than administrative expense claims, "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d). "By treating a preconversion claim that arises after the order for relief as if it had arisen immediately before the date the petition was filed, section 348(d) renders such claims subject to discharge in the converted case." 3 COLLIER ON BANKRUPTCY ¶ 348.05[3] (16th ed. 2021). "While in the usual Chapter 7 case the 'order for relief' refers to the filing of the Chapter 7 petition . . . where there has been a conversion, that language refers to the conversion of the case to a Chapter 7 case." *In re Fickling*, 361 F.3d 172, 174 (2d Cir. 2004) (citing 11 U.S.C. § 348(b)). "For purposes of discharge, all claims, including claims for administrative expenses, that arise after the filing of the Chapter 11 petition but prior to the conversion to Chapter 7, and that are not expressly exempted by [section] 523, are subject to discharge." *In re Fickling*, 361 F.3d at 175. But here, of course, as already explained, sections 523(a)(5) and 523(a)(15) excepts from discharge claims that fall within those subsections. The effect of section 348(b) is to make claims that arose between the filing of the

13

chapter 11 petition and the conversion to chapter 7 able to receive distributions from the Debtor's estate with any unpaid amounts excepted from discharge.

But there is a further question that arises in this case. Do Ms. Purewal's claims that are based on the Matrimonial Order give rise to prepetition claims since the Matrimonial Order was entered on September 24, 2021, well after the December 24, 2020 conversion date or the March 25, 2021 Bar Date? Ms. Purewal timely filed her Proof of Claim on February 26, 2021. So, should Ms. Purewal's claims included in her Proof of Claim (specifically, claims related to excepted distributions from the pending Divorce Action) be treated as "prepetition claims" for purposes of distribution even though the State Court award came later?

The Court concludes that all the awards determined to be Equitable Distribution Awards should be considered as prepetition awards even though the amounts were fixed in the later Matrimonial Order. This result follows from the Divorce Action having been interrupted by—and the awards were determined during—the Debtor's bankruptcy case.

In *DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625, 636 (Bankr. E.D.N.Y. 2006), the court analyzed whether claims of the debtor's former spouse for equitable distribution created by a New York state court's divorce judgment entered post-petition was a prepetition debt. The *DiGeronimo* court noted that there was a split in authority, with some courts outside of New York holding that a divorce judgment entered post-petition creates a post-petition debt, and cases applying New York law holding that a divorce judgment entered post-petition creates a prepetition debt. *Id*. The court held that the former spouse's claim was a prepetition claim. *Id*. at 638. To reach this determination, the *DiGeronimo* court relied on two opinions from the Southern District Bankruptcy Court—*In re Anjum* and *In re Cole*. *Id*. at 637–38.

14

First, in *In re Anjum*, 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003), the court explained that a "post-petition divorce judgment . . . results only in a pre-petition, unsecured monetary claim on the part of the former spouse entitled to share ratably in the debtor's estate with other unsecured claims." Second, in *In re Cole*, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996), Judge Bernstein explained that under New York law, one spouse's rights in marital property owned by the other are inchoate and do not vest until entry of a judgment of divorce. "If bankruptcy intervenes before the state court enters the judgment, the trustee's status as a hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property . . . and leaves her with a general unsecured claim." *Id.* (citations omitted). *See also In re Lefrak*, 223 B.R. 431, 439 (Bankr. S.D.N.Y. 1998) ("[I]f bankruptcy intervenes prior to the divorce decree, the bankruptcy cuts off the inchoate right in 'marital property,' and leaves the nondebtor spouse with an unsecured claim.").

Kalsi's Divorce Action was commenced prepetition on September 27, 2017, and the State Court issued the Matrimonial Order determining award amounts post-petition on September 24, 2021. All of Ms. Purewal's claims arising from the Divorce Action—both domestic support obligations and equitable distribution—would have been contingent claims that could only be determined by the State Court. Ultimately, despite the entry of a post-petition divorce decree, all the awards determined to be Equitable Distribution Awards, and for that matter Domestic Support Awards, should be considered as prepetition awards. *See In re Digeronomio*, 354 B.R. at 637; *In re Cole*, 202 B.R. at 360; *In re Anjum*, 288 B.R. at 76.

None of the above cited cases included proceeds from a sale of property that were awarded as equitable distribution. However, the Court concludes that their holdings apply to sale proceeds from the two properties in Kalsi's bankruptcy case (in addition to the other awards)

15

because the proceeds from the sale are considered part of the Equitable Distribution Awards. As noted earlier, this does not mean that Ms. Purewal is guaranteed a right to payment for her Equitable Distribution Awards but only that she has a non-discharged general unsecured claim that arises from them. *See In re Lefrak*, 223 B.R. at 439.

## V. PUREWAL'S REMAINING CLAIMS FOR RELIEF IN THE COMPLAINT ARE DISMISSED

Ms. Purewal's Complaint includes two other claims for relief, but as explained below, neither of these claims raise cognizable claims. Purewal asks for damages in the amount of $3.5 million and for costs incurred by the suit. (Complaint at 7.) The Trustee's motion to dismiss stated that Ms. Purewal provided "no factual or legal basis for such relief in the Complaint." (ECF Doc. # 7, ¶¶ 51–52.) The Debtor's Answer merely asked that the Court dismiss the Complaint in its entirety. (Answer ¶ 53.) Ms. Purewal's Reply to the Trustee's motion to dismiss made no mention of the requested award for damages or court costs. (*See* Reply.)

In *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 313 (S.D.N.Y. 2001), the district court dismissed the plaintiff's amended complaint *sua sponte* against all defendants despite only some of the defendants having filed a motion to dismiss. The district court concluded that it "may dismiss a complaint *sua sponte* for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard." *Id.* (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (where the district court's *sua sponte* dismissal was vacated because the plaintiff did not have the opportunity to be heard). The plaintiff in *Sonds* had been heard because he had filed a response to the motion to dismiss. *Sonds*, 151 F. Supp. 2d at 313.

With respect to the recovery of taxable costs, as already mentioned, Ms. Purewal cannot recover costs from the Trustee since the Trustee is the prevailing party. As to costs against

16

Kalsi, Ms. Purewal will have to file a bill of costs which appears to be limited to recovery of the adversary proceeding filing fee.

Ms. Purewal successfully litigated her claims against Kalsi in the State Court and this Court has determined that the awards set forth in the Matrimonial Order are non-dischargeable. Ms. Purewal has received all the relief to which she is entitled.

## VI.    CONCLUSION

This Opinion addresses the proper treatment for distribution of estate property of Purewal's claims that are either domestic support obligations or equitable distribution. All her claims set forth in her Proof of Claim, which arise from the Divorce Action, are determined to be prepetition claims. Additionally, her Domestic Support Awards are to be afforded a priority treatment under section 507(a)(1)(A) of the Bankruptcy Code and her Equitable Distribution Awards are to be treated as general unsecured claims.

**IT IS SO ORDERED.**

Dated:  March 3, 2022
          New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge